IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE DAVIS, | 1:12–CV–01362–AWI–MJS |
| Plaintiff, | |
| v. | |
| CITY OF SELMA, D-B HEUSSER, City | **ORDER RE: MOTION TO DISMISS** |
| Manager, MYRON DYCK, Chief of Police, and | |
| DOES 1-20, | (DOC. 12) |
| Defendants. | |

## I.     INTRODUCTION

City of Selma, ("Defendant" or "City") has filed a motion to dismiss the compliant pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For reasons discussed below, the motion shall be granted.

## II.     FACTS AND PROCEDURAL BACKGROUND

On August 20, 2010 Stephanie Davis ("Plaintiff") filed her complaint against Defendant City of Selma , asserting causes of action for (1) violation of 42 U.S.C. §1983- freedom of speech, First and Fourteenth Amendments, (2) violation of 42 U.S.C. §1983- free exercise of religion, First and Fourteenth Amendments, (3) violation of 42 U.S.C. §1983- equal protection,

Fourteenth Amendment, (4) violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc(a), (5) violation of RULIPA, 42 U.S.C. §2000cc(b)- equal terms, (6) violation of RLUIPA, 42 U.S.C, §2000cc(b)- nondiscrimination, (7) violation of RULIPA, 42 U.S.C. §2000cc(b) unreasonable limits, and (8) violation of the California Constitution, Article I §2- freedom of speech and expression.

Plaintiff alleges that she is a spiritual counselor and provides counseling in the County of Fresno outside of the incorporated city of Selma, but seeks to provide spiritual counseling within the City. (Compl.  ¶6.) Plaintiff describes herself and her services in pertinent part as follows:

> Ms. Davis' spiritual counseling activities are founded on and motivated by her fundamental religious principles and beliefs. [¶] Ms. Davis has practiced spiritual counseling for twelve (12) years.  Ms. Davis utilizes a variety of methodologies and techniques that are tailored to the client's specific spiritual needs and goals. Ms. Davis sincerely believes in a counseling method that involves palm, angel cards, spiritual readings, astrology and clairvoyant and medium abilities. [¶] Ms. Davis' spiritual counseling involves religious beliefs, exercise of these beliefs and expressive activity that includes opinions that are sincerely held by her.

Compl. ¶¶ 7-9. Plaintiff describes her counseling sessions as follows:

> Ms. Davis' clients voluntarily seek her services and she is compensated at an established rate.  The purpose, nature and duration of each session are determined by the client in consultation with Ms. Davis.  Each client establishes his or her own specific goals and determines which methodologies and techniques will be employed during each counseling session. [¶] During counseling sessions, Ms. Davis' clients voluntarily provide her personal information regarding work, business, love, children, family and other matters relevant to the client's counseling session.  Ms. Davis holds this information in confidence in accordance with her fiduciary responsibilities to her clients.  Ms. Davis counsels her clients in accordance with her faith, skills, and techniques garnered through her years of practice.  Ms. Davis' opinions are representations of faith and revelation and are not intended to induce reliance nor are expressions of fact. [¶] Ms. Davis works with her clients to help them achieve a greater understanding of their lives and how their spiritual health affects their interpersonal relationships and life decisions. [¶] Similar to persons seeking pastoral, psychological and legal counseling services, Ms. Davis' clients regularly seek her counsel and guidance.

Compl. ¶¶7-14.

According to Plaintiff, the description of her services places her within the definition of "Fortune Teller" under Title V, Chapter 20 of the Selma Municipal Code ("S.M.C."). "[T]he term "Fortune Telling" shall mean and include the practice of astrology for compensation, palmistry, phrenology, life reading, fortune telling, cartomancy, clairvoyance, clairaudience, crystal gazing, medium shift, prophecy, augury, divination, necromancy, and graphology." *See* Selma Municipal Code, Chapter 20, §5-20-1(B). The current section of the municipal code was adopted on May 7, 2012 and replaced Title V, Chapter 20 which made it unlawful for anyone to engage in "Fortune Telling" within the City.

The S.M.C. requires "Fortune Tellers" to obtain a license in order to provide services within the City.  It is this requirement that gives rise to the current action.  As per Plaintiff's complaint, "Ms. Davis is presently seeking a business license from the City of Selma, but Ms. Davis asserts that the City's licensing requirements are unduly burdensome, intrusive and restrictive." ( Compl. ¶ 15.) To what extent Plaintiff is "seeking" a business license–that is, what specific measures she has undertaken towards obtaining a license as prescribed by the S.M.C.–is a point of contention in this action.  It is undisputed that, regardless of the measures Plaintiff allegedly undertook in beginning the application process, she at some point abandoned the process.  Plaintiff alleges: "Here, Plaintiff . . . began the application process by providing Defendants her background information but has since abandoned the process because it is too restrictive." *See* Doc. 14 4:21-22. Plaintiff continues and states: "Plaintiff further alleges that she began the application process but that Defendants' imposed licensing restrictions are 'unduly burdensome, intrusive and restrictive.'  Stated otherwise, Plaintiff has alleged that applying for a license is objectively futile and, thus, she has self-censored herself by abandoning the process." *Ibid*. at 8:12-16. To date, neither party alleges Plaintiff ever completed an application.

Against Plaintiff's complaint and causes of action, the City filed a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on September 18, 2012. On September 24, 2012 Plaintiff filed an opposition to the motion to dismiss. On October 19, 2012 the City filed a reply to Plaintiff's opposition, and the matter now stands before this Court.

### III.   LEGAL STANDARD

#### A.  Motion To Dismiss Under Rule 12(b)(1)

A party may move to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "When subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001) (abrogated on other grounds by Hertz Corp. v. Friend, 130 S.Ct. 1181, 1186 (2010)).  " 'Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) . . . .' " Robinson v. U.S.,586 F.3d 683, 685 (9th Cir. 2009) (internal citations omitted).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

#### B.  Motion To Dismiss Under Rule 12(b)(6).

A complaint must also contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted.  Bell Atlantic Crop. v. Twombly, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, the

court is not required to accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. <u>Daniels-Hall v. National Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV.   DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction under rule 12(b)(1) because Plaintiff's claims are not ripe. In addition, Defendant argues that Plaintiff fails to state a claim of a constitutional violation or a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") under rule 12(b)(6).

### A.  Ripeness

Article III of the United States Constitution gives the court jurisdiction over "actual, ongoing cases or controversies." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 474 (1990). To satisfy the case or controversy requirement, Plaintiff must show she has standing and that her claim is ripe. The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . " <u>Abbot Laboratories v. Gardner</u>, 387 U.S. 136, 148-49 (1967) (abrogated on other grounds by <u>Califano v. Sanders</u>, 97 S.Ct. 980 (1977)). There are two components to ripeness: a constitutional component and a prudential component. <u>Wolfson v. Brammer</u>, 616 F.3d 1045, 1058 (9th Cir. 2010). If the court finds there is no constitutional ripeness, then the claim may be dismissed for a lack of subject matter jurisdiction and prudential ripeness need not be decided. <u>See</u> <u>id.</u> at 1063.

A claim that alleges a violation of the Religious Land Use and Institutionalized Persons Act must also meet the case or controversy requirement set out in Article III. The plaintiff in a RLUIPA case must have standing and a ripe claim before the Court can adjudicate the case.

### 1. Constitutional Ripeness

The Court must determine if Plaintiff's claims are constitutionally ripe. A constitutional challenge to a proscriptive statute is ripe if the Plaintiff is subject to a "genuine threat of imminent prosecution." Wolfson v. Brammer, 616 F.3d 1045, 1058 (quoting San Diego County Gun Rights Commission v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996)). To determine if there is an imminent threat of prosecution, the Court must first determine whether the plaintiff has articulated a concrete plan to violate the law in question. Wolfson, 616 F.3d at 1058. Second, the Court must determine whether the prosecuting authorities have communicated a specific warning or threat to initiate enforcement proceedings. Id. at 1058. Lastly, the history and past prosecution or enforcement under the challenged statute will be considered. Id. at 1058. These ripeness requirements are applied less stringently in the context of First Amendment claims. Id. at 1058 (quoting California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003)). Under the relaxed standard, a plaintiff does not need to wait until a threatened injury is consummated before challenging a statute that allegedly restricts protected conduct. Wolfson, 616 F.3d at 1058.

Plaintiff has alleged a First Amendment violation, and thus her claim is subject to the lessened standard of constitutional ripeness. Plaintiff must allege that she has a concrete plan to violate the S.M.C. in the future to satisfy the first element of the constitutional ripeness analysis. Under the first prong, the "concrete plan" does not have to be cast in stone. For example, in Wolfson, the plaintiff planned on running for judicial office in the future, but not in the next judicial race. Because the plaintiff had a plan and an intent to run in the future, the court found this to be a sufficient plan. By contrast, the court in Lujan v. Defenders of Wildlife held that intent was lacking when plaintiffs were unable to specify when they would next return to observe the endangered species in other countries. Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992). "Some day" intentions are not concrete plans and do not satisfy the first prong of the constitutional ripeness test. Id. at 564. Plaintiff's "plans" are more apposite to those in Lujan than Wolfson. Plaintiff has not alleged a clear intent to violate the S.M.C. in the future. The only

allegation made by Plaintiff that may suggest she even has a concrete plan to violate the S.M.C. is that at the request of her clients, she is seeking to provide spiritual counseling within the city limits of Selma. (Compl. ¶6.) This falls far short of the requirements of the first prong as Plaintiff has not claimed any concrete plan to open and operate a fortune telling business within the City. Plaintiff has simply alleged that her clients have requested she begin to provide counseling within the City. This is not a concrete plan to operate without a "Fortune Teller" license. Accordingly, Plaintiff has not met the first element of the constitutional ripeness test.

The second prong of the constitutional ripeness analysis calls for a finding of a threat of enforcement of the allegedly unconstitutional ordinance. While courts do not require plaintiffs to await arrest or prosecution before bringing a constitutionality challenge, there must be a credible threat of enforcement, not merely an imaginary or speculative threat of enforcement. Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1140 (9th Cir. 1999). Without claiming that she has ever been threatened with prosecution, that prosecution is likely, or even that prosecution is remotely possible, Plaintiff cannot satisfy the second prong of the constitutional ripeness analysis. Id. at 1140. Plaintiff does not allege that she ever received a threat of enforcement of the S.M.C. against her, nor does Plaintiff allege that prosecution is likely or possible. Plaintiff only claims that the S.M.C. is burdensome and places restrictions on her protected speech. Neither of these allegations is sufficient to show a threat of enforcement of the S.M.C. Plaintiff clearly does not meet the second element of constitutional ripeness.

The last element of the constitutional ripeness test is the history of enforcement of the S.M.C. provision. This element of the constitutional ripeness test is not as vital to the analysis when an ordinance is fairly new. The court in Wolfson held that when the ordinance is new and there is little evidence in the record of past enforcement and interpretation, the record may still be sufficient to render a decision on the issue of constitutional ripeness. Wolfson, 616 F.3d at 1060. Plaintiff claims that the S.M.C. has not been enforced. Plaintiff argues that pastors of churches and marriage and family counselors- people she claims are engaged in prophecy and located within Selma city limits, and thus Fortune Tellers under the S.M.C.- are not required to apply for a "Fortune Teller" permit. ( Compl. ¶9.) The Court does not find this allegation of past

(un)enforcement convincing.  In any case, because Plaintiff's allegations do not meet the first two elements of the constitutional ripeness analysis, the Court need not decide this last element.

Based on the forgoing, Plaintiff has not proved any of the elements required for constitutional ripeness. Plaintiff has not shown intent or a concrete plan to violate the S.M.C., Plaintiff has not been subject to a threat of enforcement, nor has the S.M.C. ever been enforced against anyone that the Court has been made aware of. With the constitutional component of ripeness lacking, Plaintiff's claims are not ripe and Defendant's motion to dismiss the first three causes of action for lack of subject matter jurisdiction must be granted.

### 2.   RLUIPA Ripeness

In addition to violations of her Constitutional rights, Plaintiff has also alleged that the S.M.C. violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In this case, Plaintiff claims the S.M.C. places a substantial burden on her religious beliefs and her ability to practice those beliefs without using the least restrictive means. (Compl. ¶¶ 80-81.) To determine if such claims are ripe, the Ninth Circuit has applied the Williamson County final decision requirement to RLUIPA claims. *See* Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957, 977 (9th Cir. 2011) (*citing* Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985)). The Williamson County final decision requirement calls for a final adjudication of the injury at the local level prior to filing a federal claim. The final decision requirement is a ripeness consideration because it helps the court avoid entanglement in abstract disputes which could be more easily resolved at a local level. Id. at 977. The final decision requirement gives the court a fuller record on which to base its decision. As it is the only way the court can know how an ordinance will be applied to a person or property, a final decision at a local level may provide the plaintiff's relief without requiring the court to engage in unnecessary constitutional analysis, and it accords with principles of federalism by allowing local disputes to be resolved at a local level. Id. at 977. Because the ripeness requirement is relaxed in First Amendment claims, the final decision requirement must be applied cautiously. Id. at 978.

Prior to imposing the <u>Williamson County</u> final decision requirement, the Court must answer two threshold questions: 1) whether the Plaintiff experienced any immediate injury as a result of the City's action, and 2) whether requiring Plaintiff to pursue additional remedies would further define Plaintiff's alleged injuries. *See* <u>Guatay Christian Fellowship</u>, 670 F.3d at 978. If Plaintiff has not suffered an immediate injury and requiring the pursuit of additional remedies would further define the alleged injuries, then the <u>Williamson County</u> final decision requirement may be applied. A claim is not ripe if no final decision has been rendered.

Addressing the first threshold question, the Court finds that the Plaintiff has not alleged nor suffered an immediate injury. In <u>Murphy v. New Milford Zoning Commission</u>, the plaintiff had been issued a cease-and-desist letter. However, the commission had no power to fine or prosecute the plaintiffs if they continued to hold prayer meetings at their home. <u>Murphy v. New Milford Zoning Commission</u>, 402 F.3d 342, 351 (2nd Cir. 2005). The court found that the injury was not immediate because the commission would have had to go through a state court action in order for any penalty to be determined. <u>Id.</u> at 351. Plaintiff in this case has not been issued any letter demanding she cease her activity. It appears Plaintiff has not even been the subject of any threat of prosecution or injury. Plaintiff does not allege that she suffered an immediate injury as a result of S.M.C.

Next, the court must determine whether pursuit of other remedies would further define the alleged injuries. Under this question, the Court must consider if a preexisting opportunity to challenge the ordinance exists. If there is another process of adjudication at a local level not engaged by the plaintiff, then the injury usually requires further definition. <u>Murphy</u>, 402 F.3d 342 at 351. This is designed to encourage parties to better define and develop the contended issue. <u>Id.</u> at 352.

Plaintiff in this case claims that the S.M.C. imposes a substantial burden on her religious beliefs and the burden is imposed without using the least restrictive means. However Plaintiff does not allege how this injury has occurred. (Compl. ¶ ¶80-81.) Defendant asserts in its motion to dismiss that without an application and rejection or acceptance of the application, there is no final, formalized action that defines the nature or extent of the impact on Plaintiff. (Defendant's

Motion to Dismiss 11:4)  The Court agrees. Requiring Plaintiff to at least apply for a "Fortune Teller" license would add to the record and help the Court determine the way in which the license is issued and how the additional zoning ordinance is applied to Plaintiff. Plaintiff's injury would be better defined if the application process yielded a final decision as to whether or not Plaintiff could engage in fortune telling in the City, answering the second threshold question. Plaintiff has also not sustained an immediate injury, so requiring Plaintiff to pursue other remedies would add to the record and help define her alleged injuries.

Plaintiff alleges her claims are nonetheless ripe because they fall within the Williamson County futility exception. The futility exception is applied when it would be impossible or improbable to obtain government approval. See Guatay Christian Fellowship, 670 F.3d at 981. Conditions of impossibility or improbability include a local authority's lack of discretion in granting or denying an application or making clear that all applications will either be granted or denied. Murphy, 402 F.3d 342 at 349. Plaintiff claims that applying for a license will be futile because the process of applying for a fortune teller license is "unduly burdensome." (Compl. ¶15.) Such an allegation hardly indicates seeking a final decision would be a futile endeavor.

Plaintiff has not suffered an immediate injury as a result of the S.M.C., and a final decision from the City Manager and Planning Commission would help define the injury. Based on its analysis of the threshold questions, the Court finds that imposition of the Williamson County final decision requirement is proper. There is no way to know the effects of the S.M.C. on Plaintiff without first requiring a final decision in order to have a fuller record on which to conduct a RLUIPA analysis. Plaintiff lacks a final decision on the S.M.C. as applied to her. Therefore, her RULIPA claims are not ripe and must also be dismissed for lack of subject matter jurisdiction.

In sum, Plaintiff's Constitutional claims are not ripe under the Constitutional ripeness analysis required by Article III's case and controversy requirement, and Plaintiff's RLUIPA claims are not ripe for consideration under the Williamson County final decision requirement. Causes of action one through seven must henceforth be dismissed.

**B.  Plaintiff's California Constitutional Violation Claim**

Plaintiff's cause of action for violation of the California Constitution is not subject to the same case or controversy requirement as the federal causes of action. National Paint & Coatings Assn. v. State of California, 58 Cal.App.4th 753, 761 (1997). That being said, the Court finds it appropriate to decline to exercise supplemental jurisdiction over this cause of action. "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). However, "[t]he district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). Further, the Supreme Court has stated if "federal claims are dismissed before trial . . . state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Because a district court may decline to exercise jurisdiction over state law claims when there is no cognizable federal claim, and no federal claims remain here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law cause of action.

## V.    DISPOSITION

For the forgoing reasons, Defendant's motion to dismiss the complaint is GRANTED without leave to amend. Because the grounds are jurisdictional, the Court hereby dismisses this action without prejudice as to all defendants and respectfully directs the Clerk of the Court to close the case.


IT IS SO ORDERED.

Dated:  __July 2, 2013__        _____

                                SENIOR  DISTRICT  JUDGE